UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DONALD EAST,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF SOUTH DAKOTA; SECRETARY OF CORRECTIONS KELLIE WASKO, INDIVIDUAL AND OFFICIAL CAPACITY; WARDEN BRENT FLUKE, INDIVIDUAL AND OFFICIAL CAPACITY; UNIT MANAGE DANIEL SESTAK, INDIVIDUAL AND OFFICIAL CAPACITY; SEX OFFENDER MANAGEMENT PROGRAM JEFF NEIL, INDIVIDUAL AND OFFICIAL CAPACITY; JOHN DOE 1, INDIVIDUAL AND OFFICIAL CAPACITY; OTHER UNKNOWN PERSONS AND ENTITIES, INDIVIDUAL AND OFFICIAL CAPACITIES,<br><br>Defendants. | 4:22-CV-04126-RAL<br><br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND § 1915A SCREENING |

Plaintiff Donald East, an inmate at the Mike Durfee State Prison, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. East moves for leave to proceed in forma pauperis and has filed a prisoner trust account report. Docs. 2, 3. East paid $350 towards his filing fee on September 15, 2022.

## I.    Motion for Leave to Proceed in Forma Pauperis

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate

pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

East reports an average monthly balance for the past six months in his prisoner trust account of $95.20 and an average monthly deposit of $161.34. Doc. 3 at 1. Based on the information regarding East's prisoner trust account, this Court grants East leave to proceed in forma pauperis. The total civil complaint filing fee is $402. Because prisoners who are granted leave to proceed in forma pauperis do not have to pay the $52 administrative fee, they only owe $350. East has already paid $350 towards his filing fee. Thus, East has paid his filing fee in full.

## II.     1915 Screening

### A.     Factual Allegations of East's Complaint

East claims that sexual assault of inmates by other inmates and by prison staff is common in Mike Durfee State Prison and in South Dakota Department of Corrections (SD DOC) facilities. See Doc. 1 ¶¶ 11, 39. He claims that the SD DOC has a policy or custom of deterring inmates and staff from reporting sexual assault and harassment. Id. ¶ 1. East alleges that those who report these incidents are retaliated against and that the SD DOC has failed to "adopt, implement, and follow" national standards regarding prison sexual assault including the Prison Rape Elimination Act (PREA). Id. He asserts that SD DOC facilities also fail to follow their own guidelines and "commit fraud and falsify records in order to be in compliance to receive federal funding." Id. ¶ 12.

East provides examples of what he believes is a South Dakota prison system culture that is "often indifferent to preventing prison rape." Id. ¶ 39. He states that night shift personnel would announce safe words and instruct inmates to sleep one person to a bunk. Id. ¶ 40. He claims that

2

news reports have covered female guards who complained of a culture of sexual abuse and harassment. Id. ¶ 44. He asserts that these complaints were covered up and led to the firing of former South Dakota State Penitentiary Warden Darin Young and the early retirement of former Secretary of Corrections Mike Leidholt. Id. ¶ 45. He provides several examples of prison officials and prison contractors engaging in sexual acts with inmates and alleges that criminal charges only followed when two involved inmates died by suicide. Id. ¶¶ 48-55. .East claims that prison staff members have announced that they may remove recreational weights and eliminate the Special Operations Response Teams from SD DOC facilities, actions he believes would make inmates more violent. Id. ¶¶ 57-59.

East provides details of sexual abuse that he allegedly underwent when he arrived at the State Prison in 2014. See id. ¶ 61-107. He alleges that he and another inmate were targeted by Inmate A, who lived in a different unit in his building. Id. ¶¶ 65, 67. East was transferred to Inmate A's unit and housed with Inmate A. Id. ¶¶ 69-70. Inmate A initially befriended East but then started making sexual comments and advances towards him. Id. ¶¶ 71, 73. East claims that another inmate "wrote a detailed kite about what he saw East had suffered from Inmate A." Id. ¶ 76. He states that he was then called into a meeting with Special Security Lieutenant Loewe and that Inmate A followed him and saw that he was meeting with Special Security. Id. ¶ 77. East alleges that he provided Loewe with a detailed list of times and dates when he was abused by Inmate A. Id. ¶ 80. Loewe told East that he would look into it and dismissed him, and Inmate A approached East as he left the meeting, demanding to know what happened. Id. ¶¶ 81-82. East states that he was called back later that day and that Loewe told him that the bunk is a blind spot with no cameras, so there was nothing they could do but move him because State Prison officials wanted to keep Inmate A out of trouble to ensure he received parole. Id. ¶ 85. He also states that

3

Inmate A was eventually moved to a different unit after two more PREA complaints were filed against him. Id. ¶ 107.

East claims that he was called into the Unit Coordinator's Office after he filed for clemency with the Board of Pardons and Paroles in 2018. Id. ¶¶ 89-90. He claims that Special Security Captain Kaufenberg handed him a page from his application that detailed Inmate A's abuse and asked him, "[W]hat the fuck is this[?]" Id. ¶¶ 92-93. East alleges that Kaufenberg took him to the dimly lit Disciplinary Housing Office in the Segregated Housing Unit and asked for more information, telling him, "[W]ell you said this fucking happened so get to talking." Id. ¶¶ 95-96. He alleges that Kaufenberg insisted he never reported the abuse to Loewe because Loewe never filed a report. Id. ¶ 97. East states that the next day, he was called into Loewe's office to meet with Loewe and Kaufenberg, at which point Loewe told Kaufenberg that he made the complaint in question. Id. ¶¶ 100-101. East asserts that he was then handed a form to sign in order to make a PREA complaint but that he was not offered this form in 2015. Id. ¶¶ 102-103.

East claims that he was sexually assaulted by Physician's Assistant Karissa Zimmer, a medical provider at the State Prison, on May 23, 2019. See id. ¶¶ 108-140. He claims that he repeatedly complained of foot pain between January and June of 2019 and that he received surgery in July 2019. Id. ¶ 111. He also claims that he had frequent urinary incontinence during this time and a single incident of bowel incontinence in March 2019. Id. ¶ 112. East asserts that at a visit on May 23, 2019, Zimmer recommended a digital rectal exam to check his rectal sphincter tone. See id. ¶ 113. He states that he expressed his discomfort with a female provider conducting the exam and asked Zimmer if a male provider could do the exam instead. Id. ¶¶ 116, 118. He claims that a male nurse was working at the time and that a male doctor also worked at the State Prison. Id. ¶ 118. He alleges that Zimmer told him, "[Y]ou have two options, one you let me stick my

4

finger up your butt and sign a consent form, so I can't be held liable, or you sign a refusal form stating you are refusing medical treatment." Id. ¶ 119. East alleges that signing the refusal form would cost him his future foot appointment, so he consented to the exam. Id. ¶¶ 120-121. East also alleges that he told Zimmer the exam was unnecessary because his bowel incident was two months ago. Id. ¶ 122. East further asserts that he "does not recall actually signing a consent form." Id. ¶ 123.

East claims that Zimmer's rectal exam lasted minutes and was not conducted with proper lubrication, causing him pain. Id. ¶¶ 125, 128-129, 131, 135. He also claims that Zimmer never inspected his anal skin or instructed him to clamp down, as is normally done during this exam, and that she conducted the exam "for the purpose humiliating, degrading, or demeaning" him. Id. ¶¶ 115, 127, 130. East asserts that the assault "rekindled the memories of the prior sexual abuse [he] suffered throughout 2014-15[.]" Id. ¶ 136. He also asserts that he has refrained from seeking further medical treatment for other issues because of his desire to avoid Zimmer. Id. ¶ 140.

East alleges that Mike Durfee State Prison Warden Brent Fluke has failed to report sexual abuse in violation of federal law. See id. ¶¶ 141-187. East alleges that he filed a prior federal civil lawsuit in 2019 in which he claimed that he had been sexually abused while in prison. Id. ¶ 146. He claims that Fluke was served in this lawsuit, filed an answer, and filed a motion for summary judgment. Id. ¶¶ 148, 150, 152. East states that he filed a response to the motion for summary judgment which contained, in bold lettering, "SEXUAL ABUSE – ZIMMER[.]" Id. ¶ 154. East contends that Fluke did not report or investigate his allegations of sexual abuse at any time. Id. ¶¶ 149, 151, 153, 155, 157, 161, 164, 166, 168. He claims that Fluke violated his duty to report sexual abuse and that the various filings in the lawsuit put Fluke on notice of the abuse. See id. ¶¶ 169, 171. East further alleges that he spoke with PREA Coordinator Brittney Lengkeek and asked her

5

what the implications would be if South Dakota were noncompliant with the PREA because of attempts to cover up sexual abuses, and Lengkeek told him that "outside auditors [from the Department of Justice] would have to do a review". Id. ¶ 263.

East states that State Prison officials retaliated against him for filing previous lawsuits by changing his MnSOST[1] score. See id. ¶¶ 266-288. Specifically, he alleges that Jeff Neil, who filled in for Brenna Carlson as manager of the Sex Offender Management Program, changed his score to an R on September 22, 2021. Id. ¶¶ 267-268., 270. East asserts that Neil was accused of retaliating against another inmate in this manner in a past lawsuit. Id. ¶ 269 (citing Blackcloud v. Kaemingk, 2014 U.S. Dist. LEXIS 77855, at *5 (D.S.D. June 9, 2014)). He states that he learned that did not receive October Earned Discharge Credits on November 2, 2021, because his MnSOST score had been changed, rendering him no longer able to earn credits. Id. ¶ 271. He asserts that a week later, he learned Neil had changed his MnSOST score to an R[2] after a September 2021 audit that was necessary because he did not have a MnSOST score. See id. ¶¶ 264, 272. East claims that he kited Neil as to why his score had changed, but Neil never responded. Id. ¶¶ 274-275. He alleges that his MnSOST scoring is flawed. Id. ¶ 277. East claims that his LSI score, another metric used to measure the risk of recidivism, was low in January 2021 and August 2022. Id. ¶¶ 279-281.

East alleges that Fluke and John Doe 1 asked Neil to punish him for filing his prior lawsuit by changing his MnSOST score to R. Id. ¶ 282. He alleges that he could not file a grievance to appeal his MnSOST score change within the 30-day window provided by SD DOC policy because he did not learn of the change during that window. Id. ¶¶ 283, 286. He asserts that SD DOC policy

---

[1] According to East, an inmate's MnSOST score "is designed to predict the likelihood of sexual recidivism in convicted sex offenders leaving prison." Doc. 1 ¶ 276.

[2] East claims that R is the highest (that is, the worst) possible score. Doc. 1 ¶ 276.

does not require staff members to provide notice to inmates of classification changes, forcing inmates to "stumble across the change within 30 days" in order to have any recourse. Id. ¶¶ 284-285.

East claims that prison officials made his housing arrangement less safe in order to retaliate against him. See id. ¶¶ 290-314. East states that Daniel Sestak "accepted a demotion in title from Captain to Unit Manager in [his] Unit, in order to monitor and target [him] upon Fluke's request." Id. ¶ 291. He states that as Unit Manager, Sestak housed smaller at-risk inmates with larger dangerous inmates because he "enjoys putting the vulnerable in danger[,]" citing as an example one instance in August 2022 where an Inmate B had to go to protective custody within minutes of being housed by Sestak. See id. ¶¶ 292-293. East asserts that he and his bunkmate signed a move slip to move Inmate B to their bunk rack and that Sestak denied this request. Id. ¶ 296. East expressed concern to Sestak about who would be moving into his bunk rack, expressing concern about "retaliation, violence, abuse, rape, and extortion." Id. ¶ 299. He claims that he and his bunk mate signed more move slips to have Inmate B moved to their cell, and Sestak continued to deny these requests. Id. ¶¶ 297-298, 301. East states that he and an Inmate C discussed East's concerns that Inmate D, a dangerous inmate, would be moved to East's bunk. Id. ¶ 303. He states that Inmate C then kited Sestak, expressing his concerns with being housed near Inmate D, and Sestak promptly made sure that Inmate D would be housed elsewhere. Id. ¶¶ 306-307. East alleges that "Sestak disregarded [his] safety but acted immediately for Inmate C's safety." Id. ¶ 308.

East states that an inmate in a different unit chased his roommate and assaulted him while calling him "an inappropriate slur referencing [that] he was a sex offender." Id. ¶ 310. He claims that Sestak allows inmates from other units into his unit "all day long with no consequence or write up for this rule infraction" and that these inmates are "some of the most dangerous[.]" Id. ¶ 312.

7

He alleges that Sestak kept a bunk in East's cell open in order to move a dangerous inmate in with East because East interviewed the PREA Coordinator as to SD DOC policies and procedures. See id. ¶ 313. He also alleges that signs placed by the phones "for the Hot Line and to report sexual abuse were removed" after he met with the PREA Coordinator. Id. ¶ 314. East further claims that he was sexually abused in December 2021. Id. ¶ 320.

East claims that the State of South Dakota has violated the Spending Clause of the United States Constitution by failing to adhere to PREA standards. Id. ¶¶ 323-343. He brings a claim for retaliation in violation of the First Amendment against all defendants. Id. ¶¶ 344-360. He brings Eighth Amendment claims for failure to prevent sexual abuse and failure to provide medical care against South Dakota, South Dakota Secretary of Corrections Kellie Wasko, and Fluke. Id. ¶¶ 361-381. He brings a Fourteenth Amendment equal protection claim against all defendants and a Fourteenth Amendment due process claim against Wasko. Id. ¶¶ 382-402. He also brings a claim against South Dakota, Wasko, and Fluke for unconstitutional customs, practices, and policies. Id. ¶¶ 403- 406. East sues all individual defendants in their individual and official capacities. Id. ¶ 28. East seeks several forms of declaratory and injunctive relief.[3] Id. at 67-69. East also asks for "compensatory, general, and special damages in an amount of $20,000,000.00 or an amount the jury deems just" and "punitive damages in an amount of $100,000,000.00 or an amount the jury deems just" as well as prejudgment and post-judgment interest, costs, and reasonable attorney's fees. Id. at 69-70. He asks for "such other and further relief as the Court deems equitable and just under the circumstances." Id. at 70.

**B.   Legal Standard**

---

[3] East classifies the forms of injunctive relief that he seeks as part of "a declaratory judgment[.]" Id. at 67. Because East seeks changes to SD DOC policies and procedures, this Court construes his complaint as seeking both declaratory and injunctive relief. See id. at 67-69.

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. See Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663-64 (8th Cir. 1985). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553-63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at

9

556).  Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

### A.    East's Causes of Action

#### 1.    Claims Against the State of South Dakota

East brings claims against the State of South Dakota.  Doc. 1 ¶ 21.  The Supreme Court of the United States has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity from suit in federal court.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 65-66 (1989).  "Eleventh Amendment immunity extends to states and arms of the state . . . ."  Thomas v. St. Louis Bd. of Police Comm'rs, 447 F.3d 1082, 1084 (8th Cir. 2006) (internal quotations omitted).

East argues that "by receiving federal [PREA] funds, the State unequivocally expressed intent to waive [its] sovereign immunity to suits for damages."  Doc. 1 ¶ 7.  He argues that because Congress indicated its desire to "protect the Eighth Amendment rights of . . . prisoners" in the PREA, it provided notice to South Dakota that acceptance of PREA funds "was conditioned on a waiver of immunity from claims for money damages."  Id. (omission in original).  East cites Cummings v. Premier Rehab Keller, P.L.L.C. for the proposition that "[l]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions.  Id. ¶ 326 (quoting Cummings v. Premier Rehab Keller, P.L.L.C., 142 S. Ct. 1562, 1568 (2022) (second alteration in original)).  He argues that South Dakota has "failed to comply with federally imposed conditions" and thus is liable under the contract-law analogy of Cummings.  Id. ¶¶ 329-330 (citing 142 S. Ct. at 1470).

In Cummings, the Supreme Court considered a patient's ability to bring claims under the Rehabilitation Act and the Affordable Care Act against a medical facility that had allegedly discriminated against her by failing to provide an ASL interpreter.   142 S. Ct. at 1568-69. Importantly, the Court noted that the Rehabilitation Act and the Affordable Care act both "expressly incorporate[d] the rights and remedies provided under Title VI [of the Civil Rights Act of 1964]."  Id. at 1569 (citations omitted).   Thus, both acts provided a private right of action to victims of discrimination.  Id.  This Court has noted that "[c]ourts have found that [the] PREA . . . does not create a private right of action enforceable by an individual civil litigant."  Rindahl v. Kaemingk, 2017 U.S. Dist. LEXIS 105964, at *2 (D.S.D. July 10, 2017) (citation omitted).

Further, the defendant in Cummings was a private medical facility and not a state entity. See 142 S. Ct. at 1568-69.  While East's contract-law argument may apply to claims against a private actor, it has no bearing on South Dakota's sovereign immunity.  "[T]he 'mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts.' "  Florida Dep't of Health and Rehab. Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 150 (1981) (quoting Edelman v. Jordan, 415 U.S. 651, 673 (1974)).  "[N]either such participation in itself, nor a concomitant agreement to obey federal law, is sufficient to waive the protection of the Eleventh Amendment."  Id. (citing Edelman, 415 U.S. at 673-74).  Thus, the State of South Dakota has not waived its Eleventh Amendment sovereign immunity by participating in and accepting federal funds under the PREA, and East's claims against the State of South Dakota are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

11

East names "the DOC (Wasko)" as a defendant on two of his claims. Doc. 1 at 61, 66. Construing his claims liberally, this Court finds that East brings these claims against both Wasko in her individual and official capacity and against the SD DOC. See id. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90-91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines the powers and characteristics of the entity that was created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985) (citing Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 727 (5th Cir. 1982)).

According to South Dakota statute, the SD DOC was created by the state legislature. See SDCL § 1-15-1.2. The SD DOC is an arm of the State of South Dakota and, as such, is not subject to suit under § 1983. See Cory, 457 at 90-91. To the extent that East brings claims against the SD DOC, those claims are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 2.      Official Capacity Claims for Money Damages

East brings claims against all individual defendants in their official capacities for money damages. See Doc. 1 at 69. All individual defendants were employees of the South Dakota Department of Corrections at the time of the allegations in question. Id. ¶¶ 22-27. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a

federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. See Pearson v. Callahan, 555 U.S. 223, 242-43 (2009) (citing County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). Here, East seeks both money damages and injunctive relief. Doc. 1 at 67-69. The State of South Dakota has not waived its sovereign immunity. Thus, East's claims against all individual defendants in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 3.   Individual Capacity Claims and Official Capacity Claims for Injunctive Relief

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). East's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

### a.   PREA Claims

East alleges that defendants failed to adhere to various provisions of the PREA. See Doc. 1 ¶¶ 21-27; 323-343. Construing his complaint liberally, East seeks to bring claims against each individual defendant under the PREA. See id. As discussed above, the PREA does not provide a private right of action. Rindahl, 2017 U.S. Dist. LEXIS 105964, at *2 (citation omitted). Thus, East cannot bring these claims under the PREA or under § 1983. See Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002) ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action."). East's claims under the PREA are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b. First Amendment Retaliation Claims

East brings claims against all defendants for retaliation in violation of his First Amendment rights. See Doc. 1 at 59. Specifically, he alleges that his classification status has been changed and his housing has been made unsafe in retaliation for engaging in protected conduct. See id. ¶ 357. To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson County, 738 F.3d 907, 911 (8th Cir. 2013) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." Revels, 382 F.3d at 876. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)).

East alleges facts sufficient to state a First Amendment retaliation claim for his classification status change. He alleges that defendants have retaliated against him by changing his classification status for "exercising his right to file lawsuits, grievances, and reporting sexual abuse[.]" See Doc. 1 ¶ 348. Specifically, he claims that "Fluke and John Doe 1 contacted Neil asking him to punish East for making [a sexual abuse] complaint with an MnSOST score of an R." Id. ¶ 282. He further claims that Neil changed his score and that this caused him to lose Earned Discharge Credits. Id. ¶¶ 270-271. Lawsuits, grievances, and sexual abuse reports are protected First Amendment activities under Jacks. See 486 F.3d at 1029 (citing Dixon, 38 F.3d at 379). He alleges that his housing and classification status were changed and that this prevented him from earning time credits, which would chill a person of ordinary firmness from filing further grievances, lawsuits, and PREA complaints, and that this was motivated at least in party by his engaging in protected activities. See Doc. 1 ¶¶ 270-271, 282, 348.

Under Parrish, East must allege that each individual defendant either directly participated in the unconstitutional conduct or caused it to occur through a failure to train or supervise the offending actor. Parrish, 594 F.3d at 1001. Here, he alleges that Neil retaliated against him by changing his classification and that Fluke and John Doe 1 asked Neil to do so. Doc. 1 ¶¶ 270, 282. East makes no allegations that the other defendants participated in this conduct or caused it to occur through a failure to train or supervise. See id. ¶¶ 266-288. He does state that "Wasko is the final policy maker and has refused to revise or remove this unconstitutional policy [of requiring inmates to challenge a classification change within 30 days,]" but he makes no allegations that Wasko's failure to act is retaliatory in nature. See id. ¶ 288. Thus, East's First Amendment retaliation claim against Fluke, Neil, and John Doe 1 in their individual capacities and against

Wasko, Fluke, Sestak, Neil, John Doe 1, and Other Unknown Persons and Entities in their official capacities for injunctive relief survives § 1915A screening.

East does not allege facts sufficient to state a First Amendment retaliation claim for his housing arrangement. He claims that Sestak was made a Unit Manager in East's unit to "target East upon Fluke's request." Id. ¶ 291. East alleges that Sestak did not respond to his concerns that a dangerous inmate, Inmate D, would be moved into his bunk, but Sestak did respond to this concern when raised by another inmate, Inmate C. Id. ¶¶ 299-300, 303-308. He also alleges that Sestak allows dangerous inmates from another unit to move through his unit without consequences. Id. ¶ 312. Although East claims that Sestak was targeting him, his allegations largely pertain to general living conditions in his unit. See id. ¶¶ 293, 312. To the extent that he alleges targeted behavior, he alleges that Sestak did not listen to his safety concerns and would not allow him his choice of bunkmate. See id. ¶¶ 296-301. While East's claims may suffice for an Eighth Amendment claim, they do not allege that Sestak or Fluke "took the adverse action because the plaintiff engaged in the protected [activity]." nor do they allege action serious enough to chill an inmate of ordinary firmness from engaging in the protected activity. See Revels, 382 F.3d at 876. Thus, East's First Amendment retaliation claim for his housing arrangement is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c.     Eighth Amendment Claims

#### (1)     Sexual Assault Claim

East alleges that Zimmer sexually assaulted him on May 23, 2019. Doc. 1 ¶¶ 110, 125, 133. Construing his complaint liberally, East brings an Eighth Amendment sexual assault claim against Zimmer. See id. ¶¶ 108-140. "Although the statute of limitations is an affirmative defense, a district court may properly dismiss [a complaint at the screening stage] . . . when it is apparent

the statute of limitations has run." Myers v. Vogal, 960 F.2d 750, 751 (8th Cir. 1992) (per curiam) (citations omitted). "[T]he Supreme Court has instructed courts to apply the most analogous statute of limitations to claims made under § 1983." Bell v. Gross, 2021 WL 2336936, at *2, 2021 U.S. Dist. LEXIS 107270, at *4 (D.S.D. June 8, 2021) (citing Wilson v. Garcia, 471 U.S. 216, 266-68 (1985)). "In South Dakota, a specific statute provides that civil rights actions must be brought within three years after the alleged constitutional deprivation occurred or the action will be barred." Bell v. Fowler, 99 F.3d 262, 266 (8th Cir. 1996) (citing SDCL § 15-2-15.2).

East alleges that the constitutional deprivation occurred on May 23, 2019. See Doc. 1 ¶ 110. Thus, under SDCL § 15-2-15.2, East needed to bring this action by May 23, 2022. South Dakota "ha[s] not officially adopted the equitable tolling doctrine for civil cases[.]" In re Estate of French, 956 N.W.2d 806, 811 (S.D. 2021) (citing Anson v. Star Brite Inn Motel, 788 N.W.2d 822, 825 n.2 (S.D. 2010)); see also Bourassa v. United States, 581 F. Supp. 3d 1188, 1198-1200 (D.S.D. 2022) (discussing the South Dakota equitable tolling standard as applied to a Bivens claim). "The threshold for consideration of equitable tolling is inequitable circumstances not caused by the plaintiff that prevent the plaintiff from timely filing." In re Estate of French, 956 N.W.2d at 811-12 (quoting Anson, 788 N.W.2d at 826).

Here, East makes no allegations of inequitable circumstances that prevented him from timely filing this lawsuit. See Doc. 1 ¶¶ 108-140. Instead, he only alleges that the incident in question violated his rights. See id. In fact, he has previously brought a lawsuit regarding this and other incidents at the State Prison, although this Court found that he did not plead an Eighth Amendment sexual abuse claim in his complaint and could not raise it in response to a motion for summary judgment. See East v. Dooley, 2020 WL 5816248, at *26-27, 2020 U.S. Dist. LEXIS 180050, at *86-91 (D.S.D. Sept. 30, 2020). Thus, this claim is properly dismissed under Myers.

17

See 960 F.2d at 751 (citations omitted); see also Jones v. Bock, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]"). To the extent that East seeks to bring an Eighth Amendment sexual assault claim against Zimmer in this lawsuit, that claim is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (2)   Conditions of Confinement Claim

East brings a claim against Wasko and Fluke for their willful disregard of sexual abuse. Doc. 1 at 61. Construing his complaint liberally, East brings a claim for deliberate indifference to unsafe conditions of confinement in violation of the Eighth Amendment. See id. ¶¶ 361-381. East also appears to bring a claim for deliberate indifference to unsafe conditions of confinement against Fluke and Sestak for his housing arrangement. See id. ¶¶ 290-314.

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.' " Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was "sufficiently serious" to deprive him of "the minimal civilized measures of life's necessities" or to constitute "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to

18

the risk of harm posed by the deprivation. Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (quoting Farmer, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement requires examining the totality of the circumstances. Villanueva v. George, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. See id.; see also Tyler v. Black, 865 F.2d 181, 183 (8th Cir. 1989).

Under Farmer, an inmate need not await a tragic event when seeking a preventative remedy for unsafe conditions. 511 U.S. at 845 (citing Helling, 509 U.S. at 33-34). Although Farmer was decided in the context of an inmate seeking injunctive relief to prevent future harm, the United States Court of Appeals for the Eighth Circuit has applied this principle to claims seeking both injunctive relief and money damages. See Blackmon v. Lombardi, 527 F. App'x 583, 585 (8th Cir. 2013) (per curiam).[4]

Here, East alleges facts sufficient to state an Eighth Amendment claim for deliberate indifference to the risk of sexual assault at the State Prison. He claims that he has been repeatedly sexually abused at the State Prison and that prison officials have failed to investigate these claims and have prevented him from reporting abuse through retaliation and through removal of signs that provide instruction on how to report sexual abuse. See id. ¶¶ 314, 376-379. Risk of sexual assault is a sufficiently serious deprivation under Simmons. See 154 F.3d at 807 (citing Farmer, 511 U.S. at 834). East also alleges that Fluke was aware of and deliberately indifferent to this risk. Doc. 1 ¶¶ 371-374. Although East alleges that Wasko "is responsible for the implementation and creation

---

[4] In Blackmon, the Eighth Circuit did not comment on the relief sought by the plaintiff. See 527 F. App'x at 583-585. But the Western District of Missouri ruling overturned in relevant part by the Eighth Circuit noted that the plaintiff sought "injunctive relief and $4,000,000.00 in damages." Blackmon v. Lombardi, 2013 WL 12145820, at *1; 2013 U.S. Dist. LEXIS 196445, at *3 (W.D. Mo. Jan. 28, 2013).

of DOC policies, procedures, and customs to guarantee the safety and proper care of the inmates,"

he makes no claim that Wasko was personally aware of and deliberately indifferent to the risk

posed to East. See Doc. 1 ¶ 22, 361-381. Thus, East's Eighth Amendment claim for deliberate

indifference to the risk of sexual assault against Fluke in his individual capacity and against Wasko

and Fluke in their official capacities for injunctive relief survives § 1915A screening.

East alleges facts sufficient to state an Eighth Amendment claim for unsafe housing. He

claims that Sestak has ignored his concerns regarding unsafe bunkmates and that Sestak allows

dangerous inmates from another unit to travel through his unit without punishment. Doc. 1 ¶¶

299-300, 312. Although "there is no § 1983 liability for violating prison policy[,]" Gardner v.

Howard, 109 F.3d 427, 430 (8th Cir. 1997), East alleges that this failure to enforce the prison

policy against inmates traveling through other units has deprived him of a safe housing

environment. See Doc. 1 ¶ 312; see also Helling, 509 U.S. at 32 (citation omitted) (listing shelter

and reasonable safety as basic human needs). Thus, East alleges a sufficiently serious deprivation

under Simmons. See 154 F.3d at 807 (citing Farmer, 511 U.S. at 834. He also claims that he has

made Sestak aware of his concerns and that Sestak has been deliberately indifferent to the risk.

See Doc. 1 ¶¶ 299-300. Other than claiming that Fluke placed Sestak in his unit to target him, East

makes no allegations that Fluke was aware of and deliberately indifferent to the risk posed by his

housing arrangement. See id. ¶¶ 291-314. Thus, East's Eighth Amendment deliberate indifference

claim for unsafe housing against Sestak in his individual capacity and against Fluke and Sestak in

their official capacities for injunctive relief survives § 1915A screening.

### (3)    Medical Care Claims

East brings a claim for failure to provide medical care against Wasko and Fluke. Id. at 61.

He alleges that his fear of encountering Zimmer has deterred him from seeking medical care for

urinary problems and other medical issues. See id. ¶¶ 321, 375. Construing his complaint liberally, East brings a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment against Wasko and Fluke. See id.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estate of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding

medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Here, East fails to state a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment. East alleges that he has had a bladder issue that caused him to go "on an emergency hospital trip" and that he has developed "severe worsening symptoms" such as uncontrollable urination and loss of consciousness. Doc. 1 ¶ 321. Thus, he alleges serious medical needs. See Dulany, 132 F.3d at 1239 (citing Coleman, 114 F.3d at 784). But East does not allege that any defendants "actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). Although he claims that he has been unable to receive medical care for fear of encountering Zimmer, he does not allege that he has brought this medical issue or his inability to receive care to the attention of prison officials, nor does he allege that prison officials have deliberately disregarded these concerns. See Doc. 1 ¶¶ 361-381. The only prison official that has been made aware of East's urinary issues, as alleged within East's complaint, is Zimmer, and East does not allege that Zimmer was deliberately indifferent to his medical needs, only that he fears further abuse from Zimmer. See id. ¶ 321. East's Eighth Amendment deliberate indifference to serious medical needs claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (4)    Failure to Protect Claims

East brings a claim against Wasko and Fluke for failure to protect him from sexual assault. Id. at 61. The Supreme Court has explained that "the protection [an inmate] is afforded against other inmates" is a condition of confinement akin to food, clothing, and medical care. Wilson v. Seiter, 501 U.S. 294, 303 (1991). To prevail on an Eighth Amendment claim for failure to protect,

22

"a plaintiff must show that a defendant was *personally involved* in the alleged deprivation of rights and *deliberately interfered* with those rights." Kenyon v. Dooley, 2014 WL 3700878, at *3, 2014 U.S. Dist. LEXIS 101673, at *10 (D.S.D. July 25, 2014) (citing DuBois v. Dooley, 277 F. App'x 651, 652 (8th Cir. 2008) (per curiam)). To establish deliberate interference, a plaintiff "must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." Id. (quoting Coleman, 114 F.3d at 784). Mere negligence does not constitute deliberate indifference. Warren v. Missouri, 995 F.2d 130, 131 (8th Cir. 1993).

East's complaint contains three allegations of sexual assault. He claims that he was sexually assaulted by Inmate A in 2014 and 2015. See Doc. 1 ¶ 64. He also claims that he was sexually abused by Zimmer on May 23, 2019. Id. ¶¶ 110, 125. East has not brought these claims within the three-year statute of limitations pertaining to these incidents. See Fowler, 99 F.3d at 266 (citing SDCL § 15-2-15.2). East makes no showing of inequitable circumstances that prevented him from timely filing this lawsuit. See Doc. 1 ¶¶ 61-140. Thus, these claims are properly dismissed under Myers. See 960 F.2d at 751 (citations omitted). East's Eighth Amendment failure to protect claims regarding these incidents are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

East alleges that he "suffered further sexual abuse in December of 2021" and that this was "a result of Defendants [sic] conduct[.]" Doc. 1 ¶ 320. East makes no other factual allegations regarding this instance of sexual abuse. See id. ¶¶ 315-321. He does not specify which conduct on the part of the defendants caused this abuse to occur. See id. Even assuming that East alleges that defendants' failure to enforce PREA standards put him at risk of sexual abuse, East fails to allege that any individual defendant was personally involved in the deprivation of his rights and

deliberately interfered with those rights regarding the December 2021 sexual abuse. <u>See id.</u>; <u>Kenyon</u>, 2014 WL 3700878, at \*3, 2014 U.S. Dist. LEXIS 101673, at \*10 (citing <u>DuBois</u>, 277 F. App'x at 652). Thus, East's Eighth Amendment failure to protect claim regarding the December 2021 incident is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### d.     Fourteenth Amendment Equal Protection Claim

East brings a claim against all defendants for violation of his Fourteenth Amendment right to equal protection of the laws. Doc. 1 at 63. He alleges that he has been "single[d] out . . . for selective treatment based upon [his] filing lawsuits, grievances, and reporting sexual abuse[.]" <u>Id.</u> ¶ 386. He alleges that defendants have "create[d] a system of classes and categories" where inmates who do not file lawsuits, grievances, and sexual abuse reports are treated differently than those that do with regard to housing and classification status changes. <u>Id.</u> ¶ 388. He claims that defendants' conduct "identifies persons by a single trait [filing lawsuits, grievances, or reporting sexual abuse, i.e., those who complain] and then denies them protections across the board." <u>Id.</u> ¶ 392 (alteration in original) (quoting <u>Romer v. Evans</u>, 517 U.S. 620, 633 (1996)).

The Equal Protection Clause of the Fourteenth Amendment requires the government to " 'treat similarly situated people alike,' a protection that applies to prison inmates." <u>Murphy v. Mo. Dep't of Corr.</u>, 372 F.3d 979, 984 (8th Cir. 2004) (quoting <u>Rouse v. Benson</u>, 193 F.3d 936, 942 (8th Cir. 1999)). To show an equal protection violation, East "must show that he is treated differently than a similarly situated class of inmates, that the different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest." <u>Id.</u> (citing <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). An equal protection claim can also be brought when "the different treatment is based upon . . . a suspect

classification[.]" Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008) (citations omitted). "Suspect classifications include those such as race, alienage, gender, or national origin." Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999). Also, "[r]eligion is a suspect classification." Patel, 515 F.3d at 816 (citing Weems v. Little Rock Police Dep't, 453 F.3d 1010, 1016 (8th Cir. 2006)).

East alleges facts sufficient to state a Fourteenth Amendment equal protection claim. Although East does not allege differential treatment based on a suspect classification, he does allege that he is being treated differently because he has exercised his First Amendment rights. See Doc. 1 ¶ 389. Specifically, he alleges that inmates who file lawsuits, grievances, or sexual abuse reports have their housing and classification status changed while those that do not exercise those rights do not undergo such changes. Id. ¶ 388. East claims that "[t]here is no rational, legitimate, or compelling interest in Defendants [sic] application of different standards to the similarly situated inmates." Id. ¶ 390. At this early phase of litigation, this Court must assume East's allegations as true. See Estate of Rosenberg, 56 F.3d at 36; Braden, 588 F.3d at 594 (citing Twombly, 550 U.S. at 556).

East makes no allegations that any individual defendant directly participated in this conduct or caused it to occur through a failure to train or supervise as required by Parrish. See Doc. 1 ¶¶ 382-395; 594 F.3d at 1001. Thus, East's Fourteenth Amendment equal protection claim against Wasko, Fluke, Sestak, Neil, John Doe 1, and Other Unknown Persons and Entities in their individual capacities is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). East's Fourteenth Amendment equal protection claim against Wasko, Fluke, Sestak, Neil, John Doe 1, and Other Unknown Persons and Entities in their official capacities for injunctive relief survives § 1915A screening.

### e.     Fourteenth Amendment Due Process Claim

East brings a claim against Wasko for violation of his Fourteenth Amendment due process rights. Id. at 65. He alleges that the SD DOC policy of requiring that inmates contest classification changes is unconstitutional given that he was not provided notice of his classification change. See id. ¶ 401. Construing his complaint liberally, East also brings this claim against Neil. See id. ¶¶ 270-282.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Smith v. McKinney, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). "Once a liberty interest is established, the next question is what process is due." Id. (quoting Williams v. Norris, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)). This question need only be answered if the inmate can establish a constitutionally protected liberty interest. Id. (citing Wilkinson, 545 U.S. at 221).

The Supreme Court has held that inmates had a liberty interest in good time credits when those credits were provided by a state statute that mandated sentence reductions for good behavior and were revokable only for "flagrant or serious misconduct." See Sandin v. Connor, 515 U.S. 472, 477 (1995) (quoting Wolff v. McDonnell, 418 U.S. 539, 545 n.5 (1974)). The Eighth Circuit has noted that "it is unclear" whether a more discretionary good time credit scheme establishes a liberty interest. Moorman v. Thalacker, 83 F.3d 970, 973 (8th Cir. 1996). Further, while inmates may have a liberty interest in retaining earned good time credits, see Sandin, 515 U.S. at 477-78 (citing Wolff, 418 U.S. at 557), they do not necessarily have a liberty interest in the ability to earn good time credits through work. See Smith, 954 F.3d at 1082 (citing Kennedy v. Blankenship, 100 F.3d 640, 642 n.2 (8th Cir. 1996).

26

South Dakota law states that inmates sentenced for "any term less than life" are "*entitled*" to earned time credits for good conduct. SDCL § 24-5-1 (emphasis added). East is sentenced to a term of less than life. See Offender Locator, S.D. Dep't of Corr., https://doc.sd.gov/adult/lookup/ (last visited Feb. 7, 2023). Under SDCL § 24-2-18, the warden may recommend to the Secretary of Corrections that good time credits be withheld in full or in part based on the disciplinary committee's recommendation or "for conduct evincing an intent to reoffend or commit further offenses when discharged or for any person convicted of a sex crime . . . who fails to fully cooperate with all treatment offered." The Supreme Court of South Dakota has stated that "[t]he right to a reduction for good conduct is absolute and cannot be granted or taken away arbitrarily." Lewis v. Class, 565 N.W.2d 61, 64 (S.D. 1997). The court found that "certain minimal due process procedures must be followed before good time can be revoked." Id. (citations omitted). A version of SDCL § 24-2-18 that was substantially similar to the current statute was in effect at the time of this decision. See Delano v. Petteys, 520 N.W.2d 606, 607 (S.D. 1994) (discussing the impact of a 1993 amendment to § 24-2-18 that rendered it similar to the current version).

East alleges that his classification change denied him time credits that he had earned. Doc. 1 ¶ 271. Although East may be claiming a mere loss of ability to earn time credits rather than the loss of time credits already earned, this Court cannot conclude on initial screening that this is the case based on East's complaint. See id. ¶¶ 266-288. This Court also cannot determine at this early phase of litigation that South Dakota law does not provide inmates with a liberty interest in good time credits or that East lacked a liberty interest in his good time credits though this Court makes no such findings at this point.

The Eighth Circuit has noted that, in the context of a disciplinary hearing, "the process due under Wolff . . . [is] advance notice of the violation, an opportunity to be heard, and a written

statement of the evidence relied on and the reasons for the disciplinary action." Holt v. Caspari, 961 F.2d 1370, 1372 (8th Cir. 1992). Although East does not allege that his loss of good time credits occurred as a result of a disciplinary hearing, this Court believes that the change to his classification is sufficiently similar to a disciplinary punishment as to invoke similar protections. See Polizzi v. Sigler, 564 F.2d 792, 797-98 (8th Cir. 1977) (applying Wolff's due process analysis to the application of a "special offenders" label to dangerous inmates that imposed "burdens uncommon to the general prison population"). But see Sanders v. Norris, 153 F. App'x 403, 404 (8th Cir. 2005) (per curiam) (finding that inmates "do[] not have a constitutional right to a particular prison . . . classification").

In Polizzi, the Eighth Circuit found that "notice to the inmate of his status, a statement of reasons for [the] classification . . . , and an opportunity to present evidence, oral or written, in opposition to [the] classification" sufficed to provide "some protection against arbitrary or mistaken action." Id. at 799. Although East's alleged deprivation of good time credits is not the same as the deprivations suffered by the "special offenders" in Polizzi, he similarly alleges that he was deprived of notice, a statement of reasons for his classification change, and an opportunity to be heard. See Doc. 1 ¶ 401; 564 F.2d at 795-96. Although Sanders stands for the proposition that inmates have no right to a particular prison classification, the Sanders court also recognized that a due process violation was still possible "in connection with the disciplinary conviction[,]" although any that had occurred in that instance "was vindicated by the reversal of the conviction." See 153 F. App'x at 404. Thus, this Court cannot determine on initial screening whether East was afforded the process due when his classification status was changed.

East alleges that Neil directly participated in the unconstitutional conduct by changing his classification status. Doc. 1 ¶ 270. Further, he alleges that Wasko, as the SD DOC policy maker,

28

participated in the unconstitutional conduct by "refus[ing] to revise or remove" the policy that fails to provide notice for classification changes. See id. ¶¶ 398-401. Thus, East's Fourteenth Amendment Due Process claim against Neil and Wasko in their individual capacities and in their official capacities for injunctive relief survives § 1915A screening.

### f.      Unconstitutional Customs, Practices, and Policies Claim

East brings a claim against Wasko and Fluke for unconstitutional customs, practices, and policies. Id. at 66. He seeks to bring a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978). Id. ¶ 29. But claims under Monell are limited to claims against municipal governments. See 436 U.S. at 690 n.54 ("Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes."). The Eleventh Amendment bars East from bringing a Monell claim against the State of South Dakota. See id. To the extent that East alleges individual defendants violated his civil rights, those claims have been screened above. Thus, East's Monell claim is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### III.   Order

Accordingly, it is

ORDERED that East's motion for leave to proceed in forma pauperis, Doc. 2, is granted. East has paid his filing fee in full. It is further

ORDERED that East's claims against the State of South Dakota and against the SD DOC are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is further

ORDERED that East's claims against all individual defendants in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is further

ORDERED that East's PREA claims are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that East's Eight Amendment sexual assault claim against Zimmer is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that East's Eighth Amendment failure to protect claims regarding the sexual assault by Inmate A in 2014 and 2015 and by Zimmer on May 23, 2019, are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that East's <u>Monell</u> claim is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is further

ORDERED that East's First Amendment retaliation claim against Fluke, Neil, and John Doe 1 in their individual capacities and against Wasko, Fluke, Sestak, Neil, John Doe 1, and Other Unknown Persons and Entities in their official capacities for injunctive relief survives § 1915A screening. It is further

ORDERED that East's Eighth Amendment claim for deliberate indifference to the risk of sexual assault against Fluke in his individual capacity and against Wasko and Fluke in their official capacities for injunctive relief survives § 1915A screening. It is further

ORDERED that East's Eighth Amendment claim for deliberate indifference to unsafe housing against Sestak in his individual capacity and against Fluke and Sestak in their official capacities for injunctive relief survives § 1915A screening.

ORDERED that East's Fourteenth Amendment equal protection claim against Wasko, Fluke, Sestak, Neil, John Doe 1, and Other Unknown Persons and Entities in their official capacities for injunctive relief survives § 1915A screening. It is further

ORDERED that East's Fourteenth Amendment Due Process claim against Neil and Wasko in their individual capacities and in their official capacities for injunctive relief survives § 1915A screening. It is further

ORDERED that all of East's remaining claims against all remaining defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that the Clerk shall send blank summons forms and United States Marshals Service Form (Form USM-285) to East so that he may complete the form to cause the complaint to be served upon Defendants Wasko, Fluke, Sestak, Neil, John Doe 1, and Other Unknown Persons and Entities. It is further

ORDERED that East shall complete and send the Clerk of Court a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, and this order upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that East will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Civil Local Rules while this case is pending.

DATED February 14, 2023.

BY THE COURT:

31

ROBERTO A. LANGE
CHIEF JUDGE