UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DONALD EAST,<br><br>Plaintiff,<br><br>vs.<br><br>SECRETARY OF CORRECTIONS KELLIE WASKO, INDIVIDUAL AND OFFICIAL CAPACITY; WARDEN BRENT FLUKE, INDIVIDUAL AND OFFICIAL CAPACITY; UNIT MANAGER DANIEL SESTAK, INDIVIDUAL AND OFFICIAL CAPACITY; SEX OFFENDER MANAGEMENT PROGRAM JEFF NEIL, INDIVIDUAL AND OFFICIAL CAPACITY; JOHN DOE 1, INDIVIDUAL AND OFFICIAL CAPACITY; OTHER UNKNOWN PERSONS AND ENTITIES, INDIVIDUAL AND OFFICIAL CAPACITIES,<br><br>Defendants. | 4:22-CV-04126-RAL<br><br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND § 1915A SCREENING OF AMENDED COMPLAINT |

Plaintiff Donald East, an inmate at the Mike Durfee State Prison, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. East moved for leave to proceed in forma pauperis and provided his prisoner trust account report. Docs. 2; 3. This Court granted East leave to proceed in forma pauperis and screened his complaint under 28 U.S.C. §§ 1915A and 1915(e)(2), dismissing the complaint in part and directing service upon Defendants in part. Doc. 5. Claims against Secretary of Corrections Kellie Wasko, Warden Brent Fluke, Unit Manager Daniel Sestak, Sex Offender Management Program Jeff Neil, John Doe 1, and Other Unknown Persons and Entities survived screening, but all claims against the State of South Dakota were dismissed. Id.

East now moves to amend his complaint to bring claims against Thomas Gilchrist and assert additional claims against Defendants named in his original complaint.  Docs. 7; 7-1.

Under Federal Rule of Civil Procedure 15(a)(1), "a party may amend its pleading once as a matter of course within . . . 21 days after serving it[.]"  Because Defendants have not yet been served in this case and East has not previously amended his complaint, East is within the window provided by Rule 15(a)(1) and may amend his complaint.  This Court will now screen East's additional claims under §§ 1915A and 1915(e)(2).

## I.    1915A Screening of Amended Complaint

### A.    Factual Background

East previously filed a complaint in this case, which this Court screened.  Doc. 5.  In East's amended complaint, he re-asserts a substantial portion the factual claims in his original complaint with some additions and alterations.  See Doc. 7-1.

East claims that he experienced sexual assault while incarcerated at the Mike Durfee State Prison (MDSP) and that the prison staff retaliated against him for reporting the sexual assault.  See Doc. 7-1 ¶¶ 19–20, 22–24, 27.  East alleges that he experienced sexual assault multiple times at the MDSP; two such occurrences were (1) sexual assault by MDSP Medical Provider PA Karissa Zimmer during a rectal exam which East was uncomfortable with on May 23, 2019, and (2) sexual abuse by another inmate, "Inmate A", from 2014 to 2015.  Id. ¶¶ 92, 110, 127, 134.

East re-asserts identical facts with slight additions compared to his initial complaint for the abuse he suffered from "Inmate A."  Id. ¶¶ 59–106.  While East was housed with "Inmate A," another prisoner sent a kite to Special Security Lt. Loewe informing him that Inmate A was sexually abusing East.  Id. ¶ 74.  East met with Lt. Loewe in the Unit Manager's Office in B3, but Inmate A followed East and saw East meeting with Lt. Loewe.  Id. ¶ 75.  Lt. Loewe informed East

that he would look into the alleged abuse.  Id. ¶ 79.  Lt. Loewe released East back to his alleged abuser, and East felt "terrified and was demoralized as to how someone who knew their [sic] was the potential that sexual abuse had occurred and did not protect the victim.  It was a clear indication to East that this was not going to be taken seriously."  Id. ¶ 82.  East alleges that keeping victimized prisoners with their alleged abuser was "the common practiced allowed and initiated by Wasko and Fluke.  Not just with potential sexual abuse victims, but even when two inmates get into a physical bloody altercation they are often returned to their same housing unit."  Id. ¶ 83.

Lt. Loewe's investigated and informed East that the bunk where the alleged abuse occurred was a blind spot from the cameras and allegedly said that "there is nothing we can do except move you.  We want [Inmate A] to get his parole and he will just do it to someone else."  Id. ¶ 84.  East maintains that the specific blind spot still exists with Wasko and Fluke knowing about it, which East alleges is a violation of CFR 28 Chp. 1, 115.13(a)(5).  Id.

East re-asserts identical facts about an alleged sexual assault he suffered from Zimmer during a rectal exam.  Id. ¶¶ 108–138.  Zimmer is no longer employed at MDSP.  Id. ¶ 139.  East states that "Zimmer's conduct was presented to Fluke who willfully chose to take no measures to report or investigate the complaint.  Instead he sent a clear message that this behavior was not only tolerated but was the normal everyday life at MDSP."  Id. ¶ 171.  "As Warden, Fluke was responsible for ensuring Special Security was notified and the matter was investigated.  In addition because of Fluke's actions East was denied an opportunity to be offered or provided medical and/or mental healthcare for Zimmer's painful rape of East."  Id. ¶ 174.  "[A]s of February 2023[, East] still has not met with Special Security about Zimmer's conduct and still has been denied an opportunity to receive mental healthcare."  Id. ¶ 181.

East alleges that in responding to the alleged abuse he suffered, Wasko and Fluke failed to abide by the provisions of the National Prison Rape Standards and the Prison Rape Elimination Act (PREA).  Id. ¶¶ 140–143.  East identifies specific policies that he claims Wasko and Fluke have not properly enforced.  Id.  East claims that Wasko and Fluke have not enforced the SD DOC's written policy which mandates "'zero tolerance' toward all forms of sexual abuse and sexual harassment and outlining the agency's approach to preventing, detecting, and responding to such conduct."  Id. ¶ 140.  Wasko and Fluke allegedly "have not referred prosecution of sexual contact of staff members and inmates as recent as January of 2023" and have deemed isolated incidents of rape to be acceptable.  Id.  East also alleges that the MDSP has taken measures to prevent reporting.  Id. ¶¶ 281–286.

East also asserts that Wasko and Fluke violated their duty "to assess, determine, and document whether adjustments are needed to the facility's deployment of video monitoring systems and other monitoring technologies [under] CFR 28 Chp. 1, 115.13(c)."  Id. ¶ 141.  East contends that his alleged rape by Inmate A was in a blind spot and the medical room where his alleged rape by Zimmer occurred does not have cameras.  Id.  "As a result Wasko and Fluke when updating a video monitoring system, electronic surveillance system, or other monitoring technology failed to consider how such technology may enhance the prison's ability to protect inmates from sexual abuse, including East."  Id.

East asserts that "[s]exual assault of inmates by other inmates and by prison staff is common in the MDSP and SD DOC [South Dakota Department of Corrections] facilities."  Id. ¶ 8.  East alleges that Wasko is liable because of her "[f]ailure to take basic steps to ensure a safe environment free of rape, retaliation, and discrimination[.]"  Id. ¶ 19.  He also states "Wasko either directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts" and has

4

a "criminal[ly] reckless disregard of Federal Law -- mainly the failure to enforce the provisions of the National Prison Rape Standards and PREA." Id.  East alleges that "Wasko and Fluke have a financial motive to falsify or cover up sexual abuse complaints; Wasko and Fluke hope to remain compliant (PREA) in order to receive federal funding for specific programs." Id. ¶ 36.

East also claims Wasko retaliated against him by not recommending to the Governor to lessen his period of confinement.  Id. ¶ 322.  East wrote Wasko a letter detailing why he thinks facts show his innocence, but East alleges that "Wasko received the letter and read it. . . . Wasko did not give East a consideration for this recommendation because East had complained of sexual abuse, filed lawsuits, and grievances." Id. ¶¶ 321, 323.

East also claims Wasko and Fluke violate policies as they "do not allow any staff members to accompany and support inmates of alleged abuse, including East through the investigatory process and interview [under] CFR 28 Chp. 1, 115.21(e)." Id. ¶ 142.  East asserts that "CFR 28 Chp. 1, 115.22(a) ensures that an administrative or criminal investigation is completed for all allegations of sexual abuse and sexual harassment." Id. ¶ 143.  East claims that Wasko and Fluke commonly do not conduct an investigation and that the only time an investigation occurs is when an inmate commits suicide.  Id.

East asserts that Fluke violated policies as he "had a mandatory requirement to report sexual abuse if he had knowledge of any potential sexual abuse" and that "[t]he facility shall report all allegations of sexual abuse and sexual harassment, including third party and anonymous reports, to the facility's designated investigators [under] CFR 28 Chp. 1, 115.61(e)." Id. ¶ 145.  East also asserts that "MDSP and its officials were required to keep a written record of each time a PREA complaint was made" and that "CFR 28 Chp. 1, 115.13(a)(10) and 115.13(a)(11) require a facility

to document substantiated and unsubstantiated incidents of sexual abuse and other relevant factors." Id. ¶ 146.

East also claims that Wasko has taken steps to make the prison environment more volatile and thus less safe. Id. ¶¶ 295–333. Gym is cancelled almost every day. Id. ¶ 54. Special Operations Response Teams have been removed from facilities, making conditions more dangerous. Id. ¶ 56. Wasko has reduced the amount of money that inmates can receive each month by $60.00. Id. ¶ 295. East also alleges that Wasko replaced the prior food provider with Aramark, which East alleges is worse because he has received bugs in the food and uncooked food. Id. ¶¶ 297–302. East also alleges that Wasko reduced family visitation hours, removed vocational classes, decreased access to Tylenol, and provided more personal items to inmates who receive transitional sex therapy medication. Id. ¶¶ 303, 307, 310, 313–318.

East also claims that the tablets Wasko provides inmates to use to conduct legal research often do not work due to network failures and are inoperable in the typing room. Id. ¶¶ 324–328. East alleges that "Wasko has willfully chosen to provide inmates, including East, access to one database (LEXIS NEXIS), while another arm of the State (AG's Office) uses another database (West Law)." Id. ¶ 331. "Wasko has done this to deter inmates from filing lawsuits or if an inmate does file a lawsuit to deny them a fair and equitable opportunity to rebut or otherwise respond to Defendants." Id. ¶ 333.

East claims that Thomas Gilchrist of the Sex Offender Management Program directly participated in retaliation against East. Id. ¶ 23. One alleged instance of retaliation was when East's MnSOST score was changed from a blank to an R and East's System Risk Level went from a zero, which is the lowest, to a three, which is the highest. Id. ¶ 254. In January 2021, East did not have MnSOST and STATIC-99 scores, which are risk assessment of static factors to predict

6

the risk of sexual recidivism. Id. ¶¶ 230, 233. East informed Gilchrist in January 2021 that he did

not have a score, and Gilchrist stated that there would not be an update with a score until East

undergoes a psychosexual evaluation prior to his parole, which would occur when he began

treatment in 2026. Id. ¶¶ 232, 256. Inmates per prison policy cannot take treatment until they are

within two years of parole. Id. ¶ 256. In November 2021, East "kited Case Manager Deb Eilers

[asking] why he had not received Earned Discharge Credits ('EDCs') in October 2021." Id. ¶ 216.

East stopped receiving EDCs because his MnSOST score changed in September 2021, making

him no longer eligible for his sentence to be reduced. Id. ¶¶ 216, 230. "According to Eilers,

Gilchrist stated East was given a score of an R due to the number of alleged victims (2) and because

force was alleged to have occurred." Id. ¶ 219. East alleges that "[a]nother inmate who was

alleged to have used force had 'more' than 2 victims received an MnSOST score of a 3[,]" which

allowed the other inmate to earn EDCs. Id. ¶ 220. East states that a second inmate "used force on

his victims, got out on parole[,] used force on more victims and was given an MnSOST score of a

1[,]" which allowed the second inmate to earn EDCs. Id. ¶ 221. East claims that Gilchrist stated

that an audit prompted the MnSOST score change, but East alleges that "[b]etween Lengekeek's

interview and East not having a STATIC-99 score proves Gilchrist's claim the MnSOST score

change was prompted by an audit is nothing less than a complete fabrication." Id. ¶ 235. East

filed grievances against Gilchrist for failing to respond to East's kites. Id. ¶ 237. East alleges that

he filed grievances against Gilchrist, Fluke, and Neil for retaliation, but "[n]o action was taken due

to Fluke's practice of covering up complaints." Id. ¶ 252.

East asserts that "Gilchrist requires individuals to disclose incriminating matters, unrelated

to their convictions, regardless of if they are true or not. Refusal to make such disclosures results

in termination of treatment and loss of parole." Id. ¶ 248. "Gilchrist and Neil selectively provide

inaccurate sex offender assessments in order to generate results that harm inmates, including East's, parole eligibility and ability to earn EDC's." Id. ¶ 249.  East alleges that "Gilchrist and Neil require inmates to never say that they have been cured and to always acknowledge that there is a risk of reoffending." Id. ¶ 250.  "Gilchrist and Neil require inmates fill out a sexual history polygraph booklet and take a test in order to be considered for parole." Id. ¶ 251. East alleges that inmates have "no chance of parole" if they refuse to complete a polygraph booklet and test. Id. East alleges that the "booklet contains private, confidential information, and is entered into a database where personnel (officers) other than those associated with the inmate's treatment can access it." Id. East has not completed a booklet yet and will be ineligible to do so until 2026 per treatment policy. Id. ¶ 251 n.1.

East sues the Defendants in their individual capacities for monetary relief and in their official capacities for injunctive relief. Id. ¶ 26. East seeks to add claims for violation of his First Amendment rights against Wasko and Gilchrist; violation of his Fourteenth Amendment rights against Wasko, Fluke, and Gilchrist; and violation of his Fifth Amendment rights against Neil and Gilchrist. Id. ¶¶ 11, 316, 324, 144.

**B.    Legal Standard**

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights

complaints cannot be merely conclusory.  Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).  If a complaint does not contain these bare essentials, dismissal is appropriate.  See Beavers v. Lockhart, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted).  Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]"  550 U.S. at 555 (internal citation and footnote omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)).  Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation removed) (quoting Twombly, 550 U.S. at 556).  Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

C.      **East's Causes of Action**

1.      **East's Causes of Action Alleged in Original Complaint Affected by the Amended Complaint**

This Court, during its § 1915A Screening, Doc. 5, dismissed the following claims alleged in East's original complaint: (1) claims against the State of South Dakota, (2) money damages claims against all individual defendants in their official capacities, (3) PREA claims, (4) a sexual assault claim against Zimmer, (5) deliberate indifference to the risk of sexual abuse against Wasko in her individual capacity, (6) deliberate indifference to unsafe conditions of confinement for his housing arrangement against Fluke, (7) deliberate indifference to medical needs claims, (8) failure to protect claim against Wasko and Fluke for sexual assault East experienced in 2019 and 2014–15, (9) failure to protect claim against Wasko and Fluke for sexual abuse suffered after December 2021, (10) Fourteenth Amendment Equal Protection claims against Wasko, Fluke, Sestak, Neil, John Doe 1, and Other Unknown Persons and Entities in their official capacities, and (11) a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978). Doc. 5 at 29–30.

East's amended complaint asserts additional facts, but those matters do not change the complexion or merit of (1) claims against the State of South Dakota, (2) money damages claims against all individual defendants in their official capacities,[1] (3) PREA claims,[2] (4) a sexual assault claim against Zimmer,[3] (8) failure to protect claim against Wasko and Fluke for sexual assault East

---

[1] In East's amended complaint, Doc. 7-1, East now alleges that "[a]ll Defendants are sued in their individual capacities for monetary relief and official capacities for injunctive relief." Doc. 7-1 ¶ 26.

[2] In East's amended complaint, Doc. 7-1, he asserts additional facts about Wasko and Fluke not enforcing PREA standards. See Doc. 7-1 ¶¶ 140–143. But PREA "does not create a private right of action enforceable by any individual civil litigant." Rindahl v. Kaemingk, 4:17-CV-04088-RAL, 2017 U.S. Dist. LEXIS 105964, at *2 (D.S.D. July 10, 2017) (citation omitted).

[3] In East's amended complaint, Doc. 7-1, he adds additional facts about his alleged sexual assault by Zimmer. See Doc. 7-1 ¶ 181. But East does not provide any facts excusing him from filing his lawsuit prior to the time limit set in the statute of limitations. See id.; Doc. 5 at 23. Thus, East's sexual assault claim against Zimmer remains dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

experienced in 2019 and 2014–15,[4] (9) failure to protect claim against Wasko and Fluke for sexual abuse suffered after December 2021, and (11) <u>Monell</u> claim; thus, these claims remain and are dismissed. <u>See</u> Doc. 7-1.

   a.  **Eighth Amendment**

     i.  **Conditions of Confinement Claim Against Wasko**

  This Court dismissed without prejudice East's claim against Wasko in her individual capacity for deliberate indifference to the risk of sexual assault because East did not claim that Wasko was personally aware or deliberately indifferent to the risk posed to East. Doc. 5 at 19–20. In his amended complaint, East alleges several required trainings that Wasko was to provide to staff. Doc. 7-1 ¶¶ 268–287. "[A] failure to train claim may only serve as a basis for § 1983 liability when the failure to train can be said to constitute deliberate indifference to the rights of others." *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). East alleges that Wasko created a common practice of deterring inmates and staff from reporting sexual abuse and harassment based on fear of retaliation. Doc. 7-1 ¶ 270. East states that Wasko failed to train or Fluke intentionally failed to follow (1) the sexual abuse zero-tolerance policy; (2) the sexual abuse and harassment prevention, detection, reporting, and response policies; and (3) inmates' right to be free from abuse. <u>Id.</u> ¶ 271. East also alleges that Wasko failed to provide refresher training for sexual abuse and sexual harassment every two years as required by policy and that Wasko failed to document signatures that the staff understand the

---

[4] In East's amended complaint, Doc. 7-1, he cites additional policies about Wasko and Fluke's duty to protect inmates from sexual harassment. <u>See</u> Doc. 7-1 ¶¶ 139–143. But East does not provide any facts excusing him from filing his lawsuit prior to the time limit set in the statute of limitations. <u>See id.</u>; Doc. 5 at 23. Thus, East's failure to protect claim against Wasko and Fluke for sexual assault East experienced in 2019 and 2014–15 remains dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

training they receive. <u>Id.</u> Construing as true all facts alleged in East's complaint, East's claim against Wasko in her individual capacity for deliberate indifference based on a failure to train survives § 1915A Screening.

ii.     **Conditions of Confinement Claim Against Fluke and Wasko**

This Court dismissed without prejudice East's claims against Fluke in his individual capacity for deliberate indifference to unsafe housing conditions. Doc. 5 at 20. For deliberate indifference, "the [prison] official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). For a supervisor, "[t]his knowledge need not be particularized[,]" and it is not required to know that the victim "was especially likely to be assaulted by the specific prisoner who eventually committed the assault." <u>Walton v. Dawson</u>, 752 F.3d 1109, 1119 (8th Cir. 2014) (quoting <u>Farmer</u>, 511 U.S. at 843). In <u>Walton</u>, the official need only know the dangerous condition and that the dangerous condition was "an obvious, substantial risk to inmate safety." <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 843).

Here, East alleges that Special Security recommended to Wasko and Fluke to move the Admission and Orientation (A&O) unit to its own building. Doc. 7-1 ¶ 356. East claims that the inmates in A&O are some of the most dangerous. <u>Id.</u> ¶ 355. "Wasko and Fluke denied the request because they prefer to put the most vulnerable inmates (B1 and B2) at the most risk." <u>Id.</u> ¶ 357. East alleges sufficient facts that Wasko and Fluke were aware of the danger of housing A&O inmates in the same building as other inmates but denied the request regardless. <u>Id.</u> ¶¶ 356–357. Construing as true for the purposes of screening the well-pleaded claims alleged in East's amended complaint, East's amended complaint provides sufficient facts to support claims against Wasko and Fluke in their individual capacity and in Wasko's official capacity for deliberate indifference

12

to the risk posed by his housing arrangement. Thus, East's claims against Wasko in her individual and official capacity and against Fluke in his individual capacity for deliberate indifference to unsafe housing conditions survive § 1915A Screening.

### iii.    Deliberate Indifference to Medical Needs Claim Against Fluke

This Court previously dismissed East's deliberate indifference to medical needs claim against Fluke because East's complaint failed to allege facts showing that Fluke was aware of East's medical need and was indifferent to it. Doc. 5 at 20–22. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estate of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been

13

diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Here, East asserts that after his alleged rape by Zimmer, East reported the sexual assault to Fluke, stating that "Zimmer's conduct was presented to Fluke who chose willfully to take no measures to report or investigate the complaint. Instead he sent a clear message that this behavior was not only tolerated but was the normal everyday life at MDSP." Doc. 7-1 ¶ 171. East states that Fluke, as warden, was required to report the allegations against Zimmer to ensure that Zimmer had not acted improperly. Id. ¶ 173. East asserts that Fluke's failure to report the alleged abuse caused East to be "denied an opportunity to be offered or provided medical and/or mental healthcare for Zimmer's painful rape of East." Id. ¶ 174. East asserts sufficient facts to show that Fluke was aware of the alleged rape, but he does not assert facts showing that Fluke was aware of the need for medical or mental health treatment arising from Zimmer's conduct. Id. Thus, East's claim against Fluke for deliberate indifference for serious medical needs is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2.     **East's Existing Claims as Brought Against Gilchrist and Additional Defendants Previously Named in the Complaint**

a.     **Injunctive Relief Causes of Action in Official and Individual Capacities**

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). East's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

### i.   First Amendment Retaliation Claims

East brings claims against the Defendants for retaliation for his exercise of First Amendment rights. See Doc. 7-1 at ¶¶ 370–386. He alleges retaliation of changing his classification status for engaging in protected conduct. Id. ¶ 382. This Court previously found that East alleged sufficient facts for First Amendment retaliation claims against Fluke, Neil, and John Doe 1 in their individual capacities and against Wasko, Fluke, Sestak, Neil, John Doe 1, and Other Unknown Persons and Entities in their official capacities for injunctive relief. Doc. 5 at 15–16. East's amended complaint asserts First Amendment retaliation claims against Wasko in her individual capacity and Gilchrist in his individual and official capacities. Doc. 7-1 ¶ 372.

To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson County,

738 F.3d 907, 911 (8th Cir. 2013) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)).

"[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the

protected [activity]." Revels, 382 F.3d at 876. "The filing of a prison grievance, like the filing of

an inmate lawsuit, is protected First Amendment activity." Lewis v. Jacks, 486 F.3d 1025, 1029

(8th Cir. 2007) (citing Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)).

  Under Parrish, East must allege that each individual defendant either directly participated

in the unconstitutional conduct or caused it to occur through a failure to train or supervise the

offending actor. Parrish, 594 F.3d at 1001. The United States Court of Appeals for the Eighth

Circuit identified that "mere negligence in failing to detect and prevent a subordinate's conduct is

not enough for liability under Section 1983 . . . 'The supervisor must know about the conduct and

facilitate it, approve of it, condone it, or turn a blind eye for fear of what [he or she] might see.'"

Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994) (quoting Jones v. City of Chicago, 856 F.2d 985,

992 (7th Cir. 1988)).

  Here, he alleges that Gilchrist retaliated against him by fabricating that an audit occurred

when Neil changed East's MnSOST. Doc. 7-1 ¶ 235. East also alleges that Wasko failed to train

Fluke properly, who East alleges was an offending actor in the retaliation. Id. ¶¶ 271, 434. "Wasko

allowed unconstitutional conduct to occur through a failure to train or supervise or enforce written

SD DOC Policies." Id. ¶ 368. Assuming as true all facts in East's amended complaint, Wasko did

not train as required, and her conduct was retaliatory in nature. See id. Thus, East's First

Amendment retaliation claims against Gilchrist in his official and individual capacity and against

Wasko in her individual capacity survive § 1915A Screening.

  East reasserts a First Amendment retaliation claim for his housing arrangement. Doc. 7-1

¶ 406. East asserts that "Wasko and Fluke were aware of and have shown deliberate indifference

to unsafe conditions of confinement in regards to East's housing arrangement." Id. ¶ 407. He does not provide any additional facts that show that the Defendants "took the adverse action because the plaintiff engaged in the protected activity" nor does he allege action serious enough to chill an inmate of ordinary firmness from engaging in the protected activity. Revels, 382 F.3d at 876. Thus, East's First Amendment retaliation claims for his housing arrangement against Wasko and Fluke are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### ii.        Fourteenth Amendment Equal Protection Claim

East reasserts his Fourteenth Amendment claim naming Gilchrist as a Defendant. Doc. 7-1 ¶ 364. East alleges facts sufficient to state a Fourteenth Amendment equal protection claim. Although East does not allege differential treatment based on a suspect classification, he does allege that he is being treated differently because he has exercised his First Amendment rights. See id. East alleges that the Defendants, now including Gilchrist, singled him out because he filed lawsuits, grievances, and reports about sexual abuse. Id. ¶ 419. East alleges that "Defendants['] conduct, on its face and as applied, is an unconstitutional abridgement of East's right to equal protection under the law, is not neutral and specifically targets East for filing lawsuits, grievances and reporting sexual abuse . . . for discriminatory and unequal treatment." Id. ¶ 414.

Specifically, he alleges that inmates who file lawsuits, grievances, or sexual abuse reports have their housing and classification status changed while those who do not exercise those rights do not undergo such changes. Id. ¶ 418. East claims that "[t]here is no rational, legitimate, or compelling interest in Defendants [sic] application of different standards to the similarly situated inmates." Id. ¶ 420. At this early phase of litigation, this Court must assume East's well-pleaded allegations as true. See Estate of Rosenberg, 56 F.3d at 36; Braden, 588 F.3d at 594 (citing Twombly, 550 U.S. at 556).

Under <u>Parrish,</u> for a defendant to be liable in their individual capacity, they must have directly participated in the alleged constitutional violation. <u>Parrish,</u> 594 F.3d at 1001. East makes no allegations that any individual defendant directly participated in this conduct or caused it to occur through a failure to train or supervise as required by <u>Parrish.</u> Thus, East's Fourteenth Amendment equal protection claim against Gilchrist in his individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). East's Fourteenth Amendment equal protection claim against Gilchrist in his official capacity for injunctive relief survives § 1915A Screening.

### 3.      East's New First Amendment Claim

Construing East's complaint liberally, he brings a claim for violation of his First Amendment right to access the courts against Wasko. Doc. 7-1 ¶¶ 324–333. "The Constitution guarantees prisoners a right to access the courts." <u>White v. Kautzky,</u> 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. <u>Lewis v. Casey,</u> 518 U.S. 343, 349 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." <u>Johnson v. Missouri,</u> 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting Lewis, 518 U.S. at 353, 116 S.Ct. 2174).

Here, East has not asserted facts sufficient to establish that he sustained an "actual injury." Doc. 7-1 ¶¶ 324–333. He stated that he is sometimes unable to access LEXIS NEXIS, but he has not alleged that he has suffered any actual injury due to the limited accessibility. <u>Id.</u> Because East has not alleged facts to support that a "nonfrivolous legal claim" has been interfered with, his First Amendment access to court claim against the Defendants is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

18

### 4.   East's New Fourteenth Amendment Equal Protection Claim

East brings a claim against Wasko for violation of his Fourteenth Amendment right to equal protection.  Doc. 7-1 ¶¶ 316, 318.  The Equal Protection Clause of the Fourteenth Amendment requires the government to "'treat similarly situated people alike,' a protection that applies to prison inmates." Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 984 (8th Cir. 2004) (quoting Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999)).  To show an equal protection violation, East "must show that he is treated differently than a similarly situated class of inmates, that the different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest." Id. (citing Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)).  An equal protection claim can also be brought when "the different treatment is based upon . . . a suspect classification[.]" Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008) (citations omitted).  "Suspect classifications include those such as race, alienage, gender, or national origin." Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999).

East alleges that Wasko permits male inmates to receive transitional sex therapy medication and prefers male inmates who elect personal items typically used by females.  Doc. 7-1 ¶¶ 313–316.  Such allegations are not sufficient to state a violation of East's equal protection rights.  East's Fourteenth Amendment equal protection claim against Wasko is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5.   East's New Fourteenth Amendment Due Process Claim

East brings a claim against Fluke in his individual and official capacity for failure to investigate in violation of East's Fourteenth Amendment right of due process.  See Doc. 7-1 ¶¶ 144–156. Although the Eighth Circuit has recognized a due process claim against "reckless or intentional failure to investigate that shocks the conscience[,]" this right protects criminal

defendants. See Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009). A criminal defendant can bring such a claim in the following circumstances: "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." Id. Here, East claims that Fluke failed to investigate East's claims of sexual abuse. Doc. 7-1 ¶¶ 144–188. East's claim does not allege Fluke recklessly or intentionally failed to investigate criminal charges against East. Thus, East's claim for failure to investigate against Fluke in his individual and official capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6.   East's New Fifth Amendment Claim

East alleges a Fifth Amendment self-incrimination claim against Gilchrist and Neil for requiring inmates in the Sex Offender Management Program to disclose incriminating matters in a required booklet. Doc. 7-1 ¶ 251. East is ineligible to access a book until 2026 when he is preparing for his release from prison. Id. n.1.

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013). Courts implement this limit through different justiciability doctrines, including standing and ripeness. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006). Broadly speaking, the standing inquiry concerns whether the plaintiff is the appropriate party to bring a particular suit. Raines v Byrd, 521 U.S. 811, 818 (1997); Flast v. Cohen, 392 U.S. 83, 99–100 (1968). The three requirements for standing are: (1) an injury in fact; (2) a causal connection between the injury and the law being challenged; and (3) a likelihood that a favorable decision will redress the injury. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102–03 (1998). Ripeness, on the other hand, concerns

20

whether a claim is being brought at the proper time. See Vogel v. Foth & Van Dyke Assocs., 266 F.3d 838, 840 (8th Cir. 2001). Claims are not ripe when they rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (citation and internal marks omitted). Ripeness often overlaps with the injury-in-fact requirement of standing, particularly when plaintiffs challenge a statute that has yet to be enforced against them. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 n.5 (2014) (stating that the issues of injury in fact and ripeness "boil[ed] down to the same question" in the preenforcement challenge before the Court) (citation omitted); Dermer v. Miami-Dade Cty., 599 F.3d 1217, 1220 (11th Cir. 2010); see also Johnson v. Missouri, 142 F.3d 1087, 1090 n.4 (8th Cir. 1998) (explaining that the doctrines of ripeness and standing "are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention.") (cleaned up and citation omitted)).

The issue here is whether East has "an injury in fact" or instead a claim resting on "contingent future events that may or may not occur as anticipated, or indeed may not occur at all." See Steel Co., 523 U.S. at 102–03; Texas, 523 U.S. at 300. To satisfy Article III standing, the injury "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Susan B. Anthony List, 573 U.S. at 158 (cleaned up and citation omitted). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Id. (cleaned up and citation omitted). East appears to be three years away from the time when he might need to complete a booklet to become eligible for parole. Doc. 7-1 ¶¶ 251 n.1, 256. The Department of Corrections of course could change requirements for parole for sex offenders in the next three years or change the booklet. Notwithstanding East's allegations, he is experiencing no "actual or imminent" injury at this time

from a policy that will not apply to him for three more years, if the policy remains in effect then. East lacks standing to challenge this component of the Sex Offender Management Program at this time, and that claim is dismissed without prejudice. Even if this Court were to allow the claim to continue, East would struggle to state a claim.

The Supreme Court of the United States ruled on the issue raised by East of self-incrimination concerns in a § 1983 context. In McKune v. Lile, 536 U.S. 24, 30–31, 48 (2002), the Supreme Court held that prison officials did not violate an inmate's Fifth Amendment rights when they imposed several punishments, such as reduction of visitation and work opportunities, removal of a personal television from the inmate's cell, and transfer of the petitioner to a maximum-security unit because the inmate refused to admit guilt, claiming potential perjury liability, as part of a Sexual Abuse Training Program (SATP). The Supreme Court noted that "respondent's decision not to participate in the Kansas SATP did not extend his term of incarceration. Nor did his decision affect his eligibility for good-time credits or parole." Id. at 38. While self-incrimination generally applies only in criminal cases, the Supreme Court "left open the possibility that a 'powerful showing' might persuade the court to expand protection of the self-incrimination clause to the point of civil liberty." Entzi v. Redmann, 485 F.3d 998, 1002 (8th Cir. 2007) (citing Chavez v. Martinez, 538 U.S. 760, 767 (2003) (plurality opinion)). But money damages are not a proper remedy for such expansion. Id. (quoting Allison v. Snyder, 332 F.3d 1076, 1080 (7th Cir. 2003)).

## II.   Order

Accordingly, it is

ORDERED that East's motion to amend his complaint, Doc. 7, is granted. The Clerk of Court shall file East's proposed amended complaint, Doc. 7-1. It is further

ORDERED that East's Eighth Amendment claim for deliberate indifference to the risk of sexual assault against Wasko in her individual capacity survives § 1915A Screening. It is further

ORDERED that East's Eighth Amendment claim for deliberate indifference to unsafe housing against Fluke and Wasko in their individual capacities and Wasko in her official capacity for injunctive relief survives § 1915A Screening. It is further

ORDERED that East's First Amendment retaliation claims against Gilchrist in his official and individual capacity and Wasko in her individual capacity survive § 1915A Screening. It is further

ORDERED that East's First Amendment retaliation claims for his housing arrangement against Wasko and Fluke are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that East's Fourteenth Amendment equal protection claim against Gilchrist in his official capacity for injunctive relief survives § 1915A Screening. It is further

ORDERED that East's First Amendment access to the courts claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that East's Fourteenth Amendment equal protection claim against Wasko is dismissed. It is further

ORDERED that East's Fifth Amendment self-incrimination claim against Gilchrist and Neil in their official capacities is dismissed without prejudice. It is further

ORDERED that the Clerk shall send blank summons forms and United States Marshals Service Form (Form USM-285) to East so that he may complete the form to cause the complaint and amended complaint to be served upon Defendants Wasko, Fluke, Sestak, Neil, Gilchrist, John Doe 1, and Other Unknown Persons and Entities. It is further

23

ORDERED that East shall complete and send the Clerk of Court a separate summons and USM-285 form for each Defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint and amended complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, a copy of the initial screening, Doc. 5, a copy of the amended complaint, Doc. 7-1, and this order upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the amended complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that East will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Civil Local Rules while this case is pending.

DATED October 6th, 2023.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

24